## Grant Whitsett, Appellant, v. Wellington Starch Company, Appellee.

MASTER AND SERVANT—*when doctrine of ,assumed· risk applies.* A servant of mature years is barred from a recovery for injuries sustained while in the service of his master if such injuries were the result of a risk open and obvious and understood by him, and of the existence of which he had made no complaint.

Action in case for personal injuries. Appeal from the Circuit Court of Macon county; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the May term, 1908. Affirmed. Opinion filed November 17, 1908.

BUCKINGHAM & GRAY, for appellant.

LE FORGEE & VAIL and BEACH, HODNETT & TRAPP, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an action on the case by appellant against appellee to recover damages for a personal injury resulting from the alleged negligence of appellee. At the close of the plaintiff's evidence the trial court, upon the motion of defendant, instructed the jury to find the defendant not guilty, and upon the verdict so returned judgment was entered against plaintiff for costs.

The declaration contains two counts. The first count alleges that on April 9, 1907, appellee was operating a starch-mill wherein there was an elevator used in carrying unfinished starch from the first floor to the floors above; that the starch was placed in receptacles which were packed in a crate which was three feet wide, five feet long and seven feet six inches high, equipped with two wheels upon an axle near the center and bottom and smaller wheels at each end, which crate when loaded weighed about 3,000 pounds; that when the crate was so loaded it was wheeled from the

first floor of the mill onto the platform of the elevator, whereby it was carried to the floor above; that the elevator platform was five feet ten inches in width and six feet ten inches in length; that in ascending and descending the elevator passed through openings in the floors and that the space between the sides of such openings and the platform of the elevator was about ¾ of an inch; that it was the duty of appellee to use due care to provide and maintain suitable appliances and guards upon the elevator and about the openings in the floors, to prevent persons from slipping off the elevator and being caught between it and the sides of the openings in the floor; that appellee not regarding its said duty negligently permitted the said elevator to be used and operated by appellant and its other employes, and negligently omitted to provide and maintain such appliances or guard; that on the day aforesaid appellant was in the employ of appellee, and the latter by its agents and servants negligently ordered and directed appellant to go upon the platform of said elevator with a crate, and to ascend with the said elevator and crate to the upper floor; that in pursuance to such order appellant got upon the elevator and started to ascend to such upper floor; that while such elevator was so ascending and while appellant was exercising due care for his own safety, by reason of the failure of appellee to provide and maintain proper appliances and guards his right foot slipped and was caught between the platform of the elevator and the side of the opening in the floor, and was thereby so crushed and mangled as to necessitate amputation between the ankle and knee.

The second count charges the same duty and breach and further alleges that the platform of the elevator was covered with starch and water thereby making the said platform slippery, and that appellee negligently permitted such starch and water to be upon the platform of said elevator.

It appears from the undisputed evidence that on

Friday, April 5, 1907, appellant applied to the super-
intendent of appellee for work, and that such superin-
tendent then introduced appellant to the foreman with
directions to the latter to put appellant to work; that
said foreman took appellant to the first floor of the
mill and said to the latter "Come in here and you can
go to work, the boys will show you what to do;" that
thereupon appellant with three other employes of ap-
pellee proceeded with their work which consisted in fill-
ing certain receptacles with starch, loading such recep-
tacles into a crate, wheeling the crate on the platform
of the elevator, and riding on the elevator to the upper
floor of the mill. The platform of the elevator was
constructed of wood, was perfectly level, and when
the elevator was in position on the first floor the sur-
face of the platform was flush with the surface of the
floor, with a space between the edge of the floor and
the edge of the platform of about $\frac{3}{4}$ of an inch.
Neither the platform of the elevator nor the floor of
the building was equipped with gates or guards.

After the crate as described in the declaration was
filled, it was wheeled directly from the floor of the
building onto the platform of the elevator and four
employes of appellee, including appellant, rode on the
elevator to the upper floor for the purpose of steady-
ing the crate while it was being lifted and unloading
it when the upper floor was reached. Appellant was
thus employed continuously for four days and had
made twenty or thirty trips per day on the elevator
up to the time he was injured. When the crate was in
position on the platform of the elevator there was an
unoccupied space of about fifteen inches on each side
of the platform and about eleven inches at each end.
Some starch sifted through the crate upon the eleva-
tor platform, and the evidence tends to show that
employes of appellee occasionally washed screens or
shakers near the elevator with a hose, and that some
of the water so used sprayed upon the elevator plat-
form.

On the occasion of his injury, while appellant was standing erect riding upon the elevator and when the elevator had ascended to a point about eight inches below the opening in the second floor of the mill, his right foot slipped off the edge of the platform and before he could regain his footing or the elevator could be stopped his foot was crushed between the edge of the elevator platform and the second floor of the mill.

Appellant testified that he had not been cautioned or warned with reference to any danger attending the use of the elevator, and that upon one occasion he remarked to one of his companions that it looked to him as if the elevator might not be perfectly safe. Whether this remark of appellant related to the slippery condition of the elevator platform or to the strength of the cable by which the elevator was operated, is not entirely clear from the evidence. It does not, however, appear from the evidence that there was any wet starch upon the portion of the platform where appellant was standing when he was injured.

The action of the trial court in giving to the jury a peremptory instruction to find appellee not guilty raises the decisive question in the case, viz., whether or not as a matter of law upon the evidence disclosed by the record appellant assumed the risk whereby he was injured. It is insisted on behalf of appellant that the rule that the servant assumes all ordinary risks incident to the business presumes that the master has performed the duties of caution, care and vigilance which the law requires of him; that it is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution that the servant assumes. This is not a correct statement of the rule governing the doctrine of assumed risk. In Cichowicz v. International Packing Co., 206 Ill. 346, it is said: "To say that the servant assumes no risk except such as cannot be obviated by the adoption of reasonable measures of precaution by the master is to abolish the

doctrine altogether.   Under such a rule the master is liable in every case where he has been negligent, although the servant knows of the danger and voluntarily encounters it without objection, and if the master has been guilty of no negligence he has a complete defense, regardless of any question of the assumption of risk by the servant."   In McCormick Machine Co. v. Zakzewski, 220 Ill. 522, it is said: "The true rule in this regard is, that the servant assumes not only the ordinary risks incident to his employment, but also all dangers which are obvious and apparent, and if he voluntarily enters into or continues in the service, knowing or having the means of knowing its dangers, he is deemed to have assumed the risks and to have waived all claims against the master for damages in case of personal injury resulting from such dangers."

In I. C. R. R. Co. v. Fitzpatrick, 227 Ill. 478, the judgment was reversed for error in giving an instruction which informed the jury that the servant did not assume dangers arising from the master's negligence.

In Klofski v. Railroad Supply Co., 235 Ill. 146, the court recognized the apparent confusion arising from the statement of the true rule as above, and the rule as sometimes stated, that the servant does not assume risks arising from the master's negligence, and in reconciling the authorities in this regard, said: "It will be found that the cases which exclude from the risks assumed by the servant such dangers as arise from the master's negligence are cases involving a consideration of the usual and ordinary hazards of the employment which are assumed by the original contract of hiring, and that the other line of cases which hold that the servant may assume dangers arising from the master's negligence are cases where the assumption of danger depends not upon the contract of hiring but upon the knowledge of the servant of the existence of danger."   It was there further said: "If the servant

has, or by the exercise of reasonable care would have, knowledge of the existence of a particular danger and continues in the employment without complaint he will be deemed to have assumed the danger; and in respect to such dangers it is wholly immaterial whether they arise from the negligence of the master or from other causes. The master's negligence is not an ordinary and usual risk of the employment, hence the servant does not assume dangers arising therefrom by his contract of hiring, but the servant knowing of such negligence may assume it, and in such cases he assumes it because he knows of it, and not because it has become an ordinary risk.''

In the case at bar appellant's assumption of the risks involved must be predicated upon his knowledge of appellee's alleged negligence in failing to equip the elevator platform with some appliance or guard and in permitting wet starch to be upon the platform, and appellant's knowledge of the dangers incident to the use of the elevator without such appliance or guard and with wet starch upon the surface of said platform, and upon his continuance in the employment of appellee without complaint or protest. Appellant at the time of his injury was of mature years and had had a varied experience in several departments of labor and in working with and about machinery. The absence of an appliance or guard upon the platform of the elevator and the danger incident to the use of the elevator without such appliance or guard was open and obvious to appellant, and he must be held chargeable with full knowledge both of the defect and of the danger. He also had like knowledge with respect to the presence of wet starch upon the surface of the elevator platform. It is not claimed on behalf of appellant that he made any complaint or entered any protest to any one sustaining the relation of vice-principal to appellee, with respect to the existing conditions. having full knowledge of the alleged defects and of the dangers incident thereto, and having continued in the

employment of appellee without complaint or protest, appellant must be held to have assumed the risks, and the court did not err in giving to the jury a peremptory instruction to find appellee not guilty. The judgment will, therefore, accordingly, be affirmed.

*Affirmed.*